For our last case of today, number 13-1603, The Estate of Thouron v. United States. Ms. McBride and Mr. Cohen. Take your time setting up. Whenever you're ready. Okay, thank you. Good afternoon, Your Honors. It may please the Court. Maureen McBride on behalf of the appellant, The Estate of Sir John Thouron. I'm joined today with my partners, William Lamb and Joel Frank. With the Court's permission, I would like to reserve three minutes for rebuttal. That's fine. Okay. By the way, do I understand correctly that Mr. Smith has now, has recently died? Yes, Your Honor. He died on January 3rd of this year. Thank you. Your Honors, as you know, this case presents a question about the penalty imposed on a taxpayer, in this case, the estate, under the Internal Revenue Code for failure to pay estate tax on time. Section 6651A2 of the IRS Code provides that a penalty will be imposed if the taxpayer fails to pay on time unless it is shown that the failure is due to reasonable cause. Let's start at the very beginning. What I don't understand, and I realize there's some arguments that may excuse it, normally you would think back in November 6th of 2007, if you file an extension of time to file, that's automatically going to be granted. You get six more months. And without thinking, you wouldn't be here today if you just filed the extension of time to pay. And I look back at what's being argued or noted in the complaint. It looked like prior to that time there was some question, and as you got closer to November 6th, there was some serious question as to whether you had calculated the amount correctly. And so you decided, okay, we'll just file the motion for extension of time to file, and the motion for extension of time to pay can be filed on or before May 6th, the six-month extension. But with all those questions that it appeared that the people had, I mean, when I look at your complaint, it says just before the nine-month deadline, that's November 6th of 2007, it became apparent to Norris, that's the executor, and to Mr. Smith, based on newly acquired information about Theron's assets that some or all of the assets previously believed to qualify for 6166 treatment, which we'll talk about later, would not likely qualify. Your Honor, that's a good question, and I will tell you when I first got involved, I asked the same question. Those are really two separate issues. The first issue with respect to the 6166 treatment, which relates to closely held businesses, is an issue that had been debated among the professionals involved in this case. The assets, I mean, this is a complicated estate. Sir John Theron was 99 when he died. His assets were across a couple of different continents. His only son had pre-deceased him. His grandchildren, the beneficiaries, were not cooperative. His records were in disarray. So it was a chaotic circumstance. You were still trying to put it together after that, which often happens. Right. So the issue with respect to the 6166 treatment is that if those assets that were covered by 6166 actually were entitled to that protection, the taxes would not be due. They would be due over a 10-year period. So only one-tenth would be due each year for 10 years. So they would not have had to pay that tax if they were entitled to the 6166 protection. Well, help me with this that speaks right to this issue. Obviously, we looked at Boyle, and Boyle says what it says about having to get your extension to file the tax return. It also seems to draw a distinction, that case and subsequent cases, between non-substantive advice. Boyle seems to focus on the extension to file the tax return as ministerial, so non-substantive advice on the one hand, and substantive advice. And it appears that what your papers are suggesting between the discussions between Norris and Donahue and Smith is that there's a lot more going on with regard to both the extension of the time to pay the tax, not just a date and time that someone with substantially less understanding of the tax law can just say, oh, yeah, it's January 1st, we've got to do that. Your Honor, you're absolutely right. I mean, the estate knew that the tax return would be ordinarily due nine months from the date of death. Everybody knows that. The executor knew that. The issue with respect to the 6166 treatment was that there was a lot of ambiguity about whether some of the assets were covered by that. But the second piece of advice that Mr. Smith gave was that you don't need to worry about that. You don't need to file your request to pay the tax, the extension to pay the tax, until you actually file your tax return on the extended date, which in this case was in May of 08. And the issue in Boyle, and I think, Your Honor, hit the nail on the head, the issue in Boyle is whether it's a ministerial task, whether you give your accountant or your lawyer physically a copy of your tax return and say, please file it. And for whatever reason, the accountant does not do that job, does not perform that task. He's actually just acting as your agent, and the principal is responsible for that conduct. Contrast that with the situation which we have here, which clearly involves advice. And Boyle doesn't draw a distinction between substantive and non-substantive advice. Boyle draws the distinction between ministerial tasks and substantive advice. And the issue, and this Court pointed it out in the letter to counsel, the issue that Boyle left open is whether in circumstances where an expert, an accountant or an attorney gives the wrong advice about a due date, is that issue, can that constitute reasonable cause for the delay that would then negate the penalty? That issue was not decided in Boyle intentionally by the Court, and yet Judge Slomski, in this case, relied entirely on Boyle for his conclusion that no reasonable cause as a matter of law could be found based on these facts. So we believe the district court erred in relying on Boyle because Boyle What if we agree with you on that? What if we say it's substantive here? What about the regulation? How have you satisfied the regulation? 66-51-1C. Well, with respect to the regulation, the issue is in Boyle, the Court said you don't need to Well, wait, don't rely on Boyle. That raises another real problem I have with this case. Boyle's a failure of file case. Right. Most of the cases I've seen are failure of file cases. There are precious few failure of pay cases. That's correct, but the courts have used the same analysis. Well, not the Supreme Court, right, not our court. Have any circuit courts explicitly said that they're going to find equivalency  And the reason I ask that is because, strangely, the regulations are different in what appear to me to be meaningful ways between the failure of file regulation and the failure of pay regulation. Let me just add on to that. Because if you look at If that wasn't enough Yeah, I hope I can remember it. Just to flesh it out. Reasonable cause under 66-51-1C is you have to establish you had ordinary care and prudence. Correct. And you may be able to do that in providing for the payment. And was, nevertheless, either unable to pay or suffered undue hardship. Is there anything in here that on November 6, 07, they were unable to pay? Well, Your Honor, before I even get to the merits of that question, that's not been an issue raised in summary judgment. That's not an issue that's listed on the issue of material facts. There's no issue, or at least not raised before the district court, about undue hardship. So I would say that for purposes of this argument, that issue has been conceded that there is undue hardship. On the merits, yes, there is. Did you allege at any time that there was an inability to pay or undue hardship that the other side did not respond to and thereby waived it? Your Honor, I don't know that we use the actual terms undue hardship. But there's evidence in this record that at the time in November, there was not enough liquidity in the estate to pay the taxes when due. It sounds like the most you could, on a failure to pay, the most you could argue here is that it should be dealt with on remand. I agree, Your Honor. I think the issue that Judge Slomski decided was an issue of law as to whether a reliance on advice with respect to how to get an extension. I think the government's position and Judge Slomski's decision stand for the proposition that as a per se matter, that can never constitute reasonable cause. In this court, in Sanderling, again mentioned in the letter to counsel and cited in our brief, in Sanderling, this court said that if you rely on the advice of counsel as to when to file, that constitutes reasonable cause. This is at the other end of the spectrum. On the first prong, you're right. It may. But it seems to me that I get hung up on the second prong of the reg I just mentioned to you. You could understand, you're trying to figure out, you know, and this deadline's looming, what do we do? And people are meeting on it. It's not like they're neglecting it. They're talking about it. But one of the things it would seem is that you also have to say, look, if it is greater, I can't pay right now or it's an undue burden because we haven't yet figured out all the assets and we haven't liquidated them, et cetera. I don't see anything like that in here. Your Honor, the estate paid $6.5 million in November, the date that the taxes would have originally been due. And that was with a $400,000 cushion. That was told to the estate by Cecil Smith, pay $6.1 million. That is the non-6166 amount that can be quantified. That's how much you have to pay now. Give yourself a $400,000 cushion. When directly asked by Mr. Donohue, what do we do about the fact that there may be more taxes owed, Mr. Smith said, you don't need to worry about that. You can decide that in May, six months from now, because you can get an extension to pay at that time. So there were two parts to that advice. Well, the problem is what you've just recited to us speaks to the reasonable cause. I thought there was emphasis, not emphasis, I'm sorry. I thought there was reference in the record to the fact that because the records were strewn all over the world and because there was no ability to quantify the tax liability that that, well, it wasn't presented or dealt with by Judge Slomski. But that would seem to me to at least be your best argument for claiming that's the undue hardship. But that's really got to be an issue that the district court deals with. Right, Your Honor. I mean, I agree with you. There was undue hardship. Just, I mean, in every estate there's undue hardship because you're dealing necessarily with somebody else's business. And nine months is not a lot of time to deal with an estate worth $100 million where there are assets, you know, all over the world. And I agree with you. We can't say that now, can we? I mean, as Judge Ambrose indicated earlier, that's a remand issue. There's not a sufficient factual record for us to make a decision regarding undue burden. I would agree with you with that, Your Honor, because the issue here is whether the summary judgment award should be vacated. We believe it should be vacated and the case should be remanded. And simply because the district court erred in concluding that this was not substantive legal advice. I agree. The crux of your argument, as I understand it, is this 6166 treatment involves complicated legal evaluation, complicated factual review. And the advice that Norris got was, don't worry about it, we'll figure this out later, and if we don't get 6166 treatment, there's no penalty. Right. He said you'd have to pay interest, but you would not have to pay a penalty. And where in the record did Norris, where do we know for sure that that was the advice that Norris got from Smith? There's testimony from Norris in his deposition testimony that he got that advice. And that was not undermined in any way? That was not undermined. I think there is a, Mr. Smith doesn't have quite a clear recollection of that issue. And I believe that the government has said that on remand, if this case goes back, they may contest that issue. But there's clear evidence, and Mr. Smith is now dead. And we have his deposition testimony where he admitted to that fact. And the great irony is, had the paper, the simple ministerial act of filing, Smith filed the paper for extension, you would have automatically been entitled to a tolling, if you will. Absolutely. And the penalty for not doing that was $1 million. Had they done it six months earlier, there would have been no penalty at all. But we believe this case is controlled. I think the Lemire's case, which we rely heavily on in our brief tax court case, addresses this issue. I mean, it really draws the distinction between advice with respect to the timing of a filing and the ministerial act of physically handing off a tax return to an expert. And in Boyle, the Supreme Court said, you don't have to go out and educate yourself. I have the quote from Boyle. I won't read it to you. But in Boyle, the Supreme Court said, we're not requiring that you go out and get a second opinion. We're not requiring that you educate yourself on the regulations, because that's more than what an ordinary, reasonable, prudent taxpayer who hires an expert must do. And so what Judge Slomski is suggesting in his opinion and what the government has posited is that that's exactly what should have been done. We should not have been able to rely on, and by the way, Mr. Smith was a 40-year veteran. He was an expert in the field. He was paid handsomely for his time and effort in this case. He had actually worked in the Estates Department at the IRS and had written books on the subject. So to say that we should have gotten a second opinion, the Estates should have gotten a second opinion. Here's a question I have about that IRS and reliance that I was a little confused about. Maybe you can help me. There's a reference in the record to Ms. Holly Hall, who I'm gathering worked for Ms. Grubbs in a professional capacity, an associate or a partner or whatever. And there's a reference in the record to her relying or her being given advice by the IRS about when to file, the amount to file. I'm going to have a cite for you in just a moment. But I guess my question is this. Is that a reference that you all rely on? Is that something that is not something that you're focused on? Yeah, I mean, I think it goes to the issue of the ambiguity of the regulations and just the lack of clarity in this area. I mean, to the extent that the instruction book, which there is no testimony, was ever presented or Mr. Norris ever reviewed, says anything to this issue, that instruction book itself is ambiguous. The advice that was given to Ms. Hall was ambiguous. And even after this penalty was imposed, Mr. Smith said the IRS got it wrong. He still believed, after the fact, that this had not properly been imposed upon the estate. So I think that this case, again, I think that this issue has already been answered in Sanderling. This Court has already ruled that an issue as to when a filing must occur, if you rely on the advice of an expert, you have demonstrated reasonable cause. That issue is not foreclosed by Boyle. And I believe that the circumstances in this case is really more nuanced. Another, again, part of the problem I have is if you look at page 31 of your brief, it goes down about the eighth or ninth line down. The estate's brief at pages 31, 32, but I'm looking at 31 right now. Yeah, the estate's brief. It says, moreover, the decision to extend the filing date was made after Smith was pointedly asked how the estate, which was not filing Form 706 and making a Section 6166 election at the time, should address the fact that the amount of its payment, $6.5 million, was less than what would ultimately be due for estate taxes. So you run into the problem. You know it's the $6.5 doesn't necessarily have a $400,000 cushion. It's actually less than what's ultimately going to be due. But I think what's not, maybe this may not be the model of clarity, but I think what's missing from that is the fact that at that point, it still had not been determined whether these assets would qualify for 6166 treatment. And when the tax return actually was filed, Mr. Smith still filed with that a protective 6166 election because it was still not clear. And so his position was, you don't need to worry about the payment because we're going to make this, when we actually pay the taxes, we're going to make this election and you'll only, if we're wrong, you only have to pay interest, not penalty. So when Mr. Donahue asked that question, he gets the answer. And that comes back full circle to where I started on paragraph 23 of the complaint. Again, just days before the nine-month deadline, it became apparent to Norris and Smith, based on newly acquired information about Theron's assets, that some or all of the assets previously believed to qualify for 6166 treatment would not qualify. And again, maybe the question is how much doesn't qualify, but when you put that in with what is noted on page 31 of the brief, I've got great sympathy for where you are. But there are two issues going on. One is with respect to the 6166 treatment and how that's to be handled, how much to pay at the due date. But the other part is, he said, don't worry about it, you have six months until May of 08 to figure that out. And if you need more time, you can get it then. So there are two parts to his advice. And I have to point out, too, that this is all happening within days, if not the day of the filing. I mean, these are not issues that had been presented to Mr. Norris well in advance where he could have said, you know what, you know, I think we better do something else. This is last-minute stuff, and Mr. Norris is the one who pulled back because he wanted to make sure that what he was doing was accurate. So he asked the specific questions, they pointedly asked the questions to a 40-year veteran, they got the answers. I'm not sure what else they should have done. I mean, to go out and read the regulations and try to figure out on their own at that point in time how much and how to get this extension would have been an impossible task. And maybe we're all missing something. There may be other facts that aren't really before us or that we don't know. But you would think that what you would say is let's be extra cautious because let's just pay way more than we think we might have to. We can always get a refund, and that way there is no interest and there's no penalty. If that had been the advice, the estate could have gotten loans, could have done other things. I mean, there was a liquidity issue, and they would have had to sell property, real estate. A lot of this was in real estate at a reduced rate in a depressed market. Had that been the advice, certainly the estate would have erred on the side of caution and done that. But the advice was don't worry about it because you have extra time, and if the worst-case scenario is you'll have to pay interest but not the penalty. The only place into the problem that you have is that you're just in effect saying that if you had to pay, you could have paid. It would have been tough, but you could have gotten loans and been able to do it. Well, that's a factual issue that's not been fully developed because of the summary judgment. I agree. Let's hear it from your opposing counsel. Mr. Cohen. May it please the Court. I'm Jonathan Cohen. I'm here, the United States. The case turns on reasonable cause, and where we begin is with the estate's tax lawyer who gives, taking this in the light, most favorable to the estate, who gives the executor incorrect advice. There is little doubt that an extension of time to file does not operate automatically as an extension of time to pay. That is crystal clear, and if, as Mr. Norris apparently did not, if you look at the form itself, I admit this is not the most legible. It's at page 042 of the joint appendix. You have a 4768, and Part 2 is an extension of time to file, which was executed. And Part 3, in the original version, this one is the May version, in Part 3 is an extension of time to pay. Now, if you were in Norris's position, he is not an attorney, he was a corporate executive, I gather he was John Theron's kind of right-hand financial man, and you were dealing with an estate that was somewhere between $40 or $45 and perhaps as much as $80 million, you would read what Mr. Smith sent you very clearly. Very carefully, and when you saw that there was nothing filled in on the extension of time to pay, you would say, wait, wait, wait, we need to discuss this. Isn't there a distinction to be drawn between the extension of the time to file on the one hand and the extension of the time to pay on the other? And what I mean by that is this. Boyle says, and I think we can all discern the reasoning behind it, that an extension of time to file is, you know, here's a date and time, I know I'm not going to be able to file by that date, I file an extension. Whereas, on the other hand, with an extension of time to pay, it would appear that more goes into the calculus of what not just the extension of time to pay, but the extension of time to pay. It's not just whether something is due, how much is due, what combination of filing the extension and or how much do we pay. It seems, at least from an outsider to the tax and estate world, to be a more involved entity. You need to give reasons for an extension of time to pay. The extension of time to file is automatic, you only get one. With an extension of time to pay, you have to give reasons, and you can get more than one. And what was the reason given here? There was no reason given for the extension of time to pay because they didn't request one. On May 6th, what reason did they give? I didn't ask my question clearly enough. You answered it by saying they gave no reason to the United States, correct? They did not fill out anything in the way of Part 3 at all. What reason did Smith give Norris? What Smith gave Norris was you don't have to worry about any penalty if you send in an extension of time to file, and if we ultimately figure out what the estate tax is, you can pay that without penalty when the extension of time to file runs out in May. And that was terrible legal advice? Yes, it was. And that was substantive legal advice? No. Norris should have researched the law regarding 616 to see if he was truly going to be entitled to it? But his highly paid, highly trained lawyer was giving him pure filing date and payment advice. But that advice was inextricably linked to the question of the 6166 treatment that only later was deemed to be unavailable to the estate. With all due respect, I think that that is a bit of a wrapper that they have put on it. There is a footnote, and in fact there was a comment that was raised earlier here by I think it may have been Judge Ambrose, that before the estate tax return was due on November 6th, whatever it was, of 2007, there was already reason to believe that 6166 relief would not be available. To some. To some. Who knows? Maybe some. They knew it wasn't a clear winner. Page 19 of our brief footnote 7, as of November 6th, Donahue had concerns that the estate was not eligible for 6166 relief because the decedent was not sufficiently involved. Doesn't that turn the other way? That means that the three of them were looking at each other going, oh, my God. And what? And they're all confused, which means it goes back to my point before, which is Boyle says failure to file the extension is ministerial, and this is clearly not ministerial. There's much more to it. It is nonsubstantive from the standpoint of does a failure, does a request for extension of time to file automatically extend the time to pay? And remember what they sent in was less than a third of what the ultimate estate tax liability was, which was $20 million. What would the ultimate liability have been had the 6166 treatment been failed? I have absolutely no idea. I have no idea what the mix of assets. It's safe to say it would have been a lot lower. It presumably would have been lower, but I have no idea. And it could have been paid over a 10-year period. No doubt about that. So all of those were unanswered questions. But those would have also been reasons to put down in Part III of the form as why we need an extension of time to pay. We need more time to pay, and besides we're illiquid and God knows what else. That all could have gone in for an extension of time to pay. Nothing was given. That's the one thing everyone agrees on in this case, that Smith should have done that. Yeah, I didn't know he was dead. Well, I have problems here, but they're in two directions. One is with Smith's advice, and if there were a remand, he ain't going to be available to testify. So heaven only knows what direction that would take. Well, you'll still have Mr. Norris and Mr. Donahue. But we do have some deposition testimony. And he really denied that he had given this, or at least he said, I don't recall giving this advice. Norris and Donahue were pretty explicit that he did. It may be that he delegated this to one Holly Hall in his office. But isn't the issue not what they should have done? I think everybody up here can come up with a better scenario. That's what we do for a living. Yeah. If there was a better scenario, people wouldn't be here. Works for me. Right. But for volatility aside for a moment, the issue is what advice was given, was it relied upon, and as it turns out, it was wrong. But we're all focusing on this reasonable cause issue and the question of whether, pardon me, reasonable cause is met under this scenario. Now, help us, because I presume you disagree that reasonable cause is met. How is this not reasonable? Okay. The estate has changed one word in the Boyle analysis, and don't get me wrong. I don't think that Boyle gets us home free, because Boyle indeed is a case that's different. You give your agent something and say, here, you take care of it. You file it on time, and he falls asleep. He doesn't know when the deadline is. It doesn't get done. There's really no advice there. There is a carve-out in that footnote nine to the Boyle thing. We don't have to decide these businesses that involve advice. But what the estate has done is changed the word whether a return is due to when a return is due. And the question whether a return is due is substantive tax law. When it's due, we submit ain't. That is procedural. But due is the filing of the form, not the payment. That's right. But here, I guess we're browbeating you a little with the notion that the question of what the taxpayer needs to pay in relation to the potentiality of a 6166 election, that is rather substantive and not ministerial. Well, that would be a perfectly good reason to put in in your request for an extension of time to pay. It's discretionary on the part of the Internal Revenue Service, but these assets are a jumble. Some of them may qualify for relief. Some of them may not be taxable at all. We don't have any idea. And there seems to be little doubt that they were having terrible valuation problems. Okay. These things take time to work out. Under the circumstances, we'll do our best. Can we have an extension of time to pay? Oh, and by the way, we're illiquid. Okay. We're not talking about that kind of reason for an extension. Those would be, I think, meritorious reasons to give them an extension of time to pay. But they didn't advance any of those reasons. The reason given was you don't have to pay until May of 2008 when the request for extension of time to file runs out. Okay. I'm really interested in your view of the regulation issue. Would you address that? Do you agree that that's a matter for remand if we were to disagree with the district court summary judgment? And also, could you educate us about why there are so few failure-to-pay cases? I guess it doesn't help decide the case. I can speculate a little. And do the Boyle failure-to-file cases transfer in mirror image to the failure-to-pay cases? Yeah. There actually is one, right? The Ninth Circuit has done this in cases called BACCI, B-A-C-C-I. That's a failure-to-pay case. And it says, applying Boyle, we also explain that a taxpayer's reasonable grant of timely file. And so we extend these determinations of reasonable cause under 6651A1, that's failure-to-file, to determinations of reasonable cause under A2. There is no reason to distinguish between reasonable cause for timely file or return and reasonable cause for failure-to-timely pay, and we refuse to do so. But the regs are different. Why? Well, the regulations deal basically with situations that are hardship, that are more pertinent to payment. Circumstances beyond the taxpayer's control, undue financial hardship, that kind of thing can justify an extension of time to pay. There are some situations where circumstances beyond the taxpayer's control have been addressed. 9-11, Katrina, Superstorm Sandy, where you have mass destruction of records. You have circumstances that dictate essentially whatever you want under these circumstances, we'll try to accommodate you. Let's assume for the moment that the advice given was wrong. In fact, in hindsight, it was clearly wrong. But when you look at our Sanderling decision, when you rely on bad advice, and you're not the expert, and clearly Mr. Norris and Mr. Donahue weren't experts in this area, what else are they to do? Sanderling is a one-off. You're right, and this may be a two-off. In other words, this may be. And it's a one-off that binds us to this day. By its terms, Judge Weiss's opinion said, in this unique factual situation, Sanderling is a very peculiar case because there the filing date was totally, it was very much in controversy. You had a dissolved corporation, and so the question was, when did its tax year end, so that what would be the date by which its last return was filed? And the IRS said, we think it's this date. No, on second thought, we think it's that date. But that isn't true here. I'm sorry? By analogy to this case, how to interpret 6166 in the final moments before November 6th was something that was up in the air. They weren't quite sure how to deal with it. Certainly one of the easiest ways, although it may not have been easy for this estate given its liquidity problems, would have been to assume that none of it qualified. Overpay, fine. You know what? Everybody in the courtroom would agree that's the easy way. We wouldn't be here. I mean, Sanderling, the corporation, could have easily said, well, there's a question as to when it's due. Let's pick the earlier date. Better safe than sorry. Nobody really knew, including the IRS. Well, let me ask you this. What's the totality of the evidence in the record on this notion that the IRS gave – I'm sorry, I forget the name. Holly – Holly Hall. Hall. I don't know much about her. She worked for Smith. She apparently was in this. She may have been an attorney. I don't know. Wasn't there a reference in the record that there was some reliance on her part on information that she had received from the IRS? I don't recall anything like that. I think she had said simply that she was forwarding something to Norris and maybe to Donahue. I just don't recall that, sir. I can answer one other question about why, perhaps, why there are relatively few failure-to-pay penalty cases and a larger number of failure-to-file cases. The maximum amount caps out in both at 25 percent, but you get there a lot faster with failure-to-file. It's 5 percent a month, and failure-to-pay is half a percent a month, so it's 6 percent a year. So the amount of money involved typically is far less. But you get to a million here because it's such a big estate. Well, here you get – here, with failure-to-file, at the beginning of the fourth month, you're in trouble. So why is the penalty – do you know why the penalty is so much harsher for failure-to-file than failure-to-pay? It's more important to get the return in. So you – they're not in the ether unknown to the service? Yeah. Oh, sure. Yeah. There's a good policy reason for it. Without the return, we can't even begin to audit. We don't have any idea what's going on. I'm sorry, I can't be helpful, Your Honor, with regard to Holly Hall. It's okay. I found what I was looking for, so I'm sorry I had to get up, but, you know. I don't know what – Here's what I have, and if it refreshes your recollection. Let's get out of carrot for a minute. What did she do? Was she a lawyer in Smith's office? Can we be out of carrot? No. I've had a couple of judges – I've been doing this for almost 50 years, and I've had a couple of judges say, Mr. Cohen, you don't understand. We're here to ask the questions, and you're here to answer them. So I don't propose to go there again. I haven't been here 50 years. But I just didn't know. Hey, keep trying. Why not? Oh, yeah, right. I just didn't know what she did. Yeah. So, well, let's let the record speak, and, you know, we'll see. So this is supposedly the death of Mr. Smith. Yeah. He would have been around for that, right? No. I was not the trial judge. I know. I know. Anyway, it says – question. And later, say in that same paragraph, this $6.5 million includes the estate taxes on assets that don't qualify for the Section 6166 election. Interest will be due November 6, 2008. And assuming IRS accepts the election, they will calculate the interest and send a bill. If the IRS determines that the $6.5 million was not enough, there is no penalty. They will calculate the deficiency and send us a notice. Correct, sir? Answer from Mr. Smith, yes. Question. Okay. And what was the rationale for making the recommendation at that time? Answer. My recollection is that this is the statement that was provided by the IRS to Holly when she called. So my question to you is – we're obviously taking note of it. It's part of the record. If we find that there was a reliance on the IRS with regard to the $6.5 million liability, does that undermine at all the notion that you've put forth today that, well, they knew it was going to be a lot more than $6.5, and so they should have paid a lot more? I don't – for instance, your adversary said, we looked at the $6.5 and we thought that was a $400,000 cushion, and obviously that might be – this might be supportive of that notion. And it might be, you would at least argue, differ from your own perspective on what was due, because that presumably would have some effect on how we view all of this. It might indeed have some bearing on how much was due. But, again, it wouldn't be germane to the notion that when you file the return and when you pay the tax are separate legal requirements that the Form 4768 addresses. And while it might indeed affect how much of an extension you would need to pay, whether these questions about, well, we can work out that amount later, would that go to reduce the amount of a failure to file penalty? No, it would not. All I'm suggesting is that when they sent this in, sent the form in, it should, as a matter of reasonableness, been a matter for the executor to hold Smith's feet to the fire and say, why are you not asking for us to fill out Part 3 as well? And that would have been a perfectly valid point to have made in Part 3. The IRS has told us we could do this. We are having all kinds of factual trouble determining this and that. But they didn't do that. They just didn't do that. Thank you very much. Ms. McBride. Your Honor, just one point on that last point about the reliance on the IRS. I think you can draw an analogy to the Sanderling case. In Sanderling, the IRS wasn't sure what the deadline was. I think in this case there's some ambiguity about how much had to be paid on that time. I just also want to say, with respect to the error, the error was not in not checking the box at the time. That was not ever presented as an option. I think opposing counsel is suggesting that we should have known that the box should have been checked, that that was the mere oversight. The advice was you don't need to do that now. You can do that at the time you file your return during the extended time period. So you don't have to request the extension to pay until May of 2008 as opposed to November of 2007. Unless Your Honors have any questions on that. No, thank you. The only thing I would ask is if counsel could get together with the clerk's office and have a transcript prepared of this oral argument and to just split the costs. Thank you, both of you, for really very well presented arguments, and we really appreciated having you here to take them out under advisement. Thank you, Your Honor.